UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                         :

MARIA STUART,                              :

                     :

                Plaintiff,             :                     14-CV-4252 (JMF)

                     :

             -v-                                :                  OPINION AND ORDER

                     :

T-MOBILE USA, INC., et al.,                 :

                     :

               Defendants.         :

                     :

------------------------------------------------------------------------X

**JESSE M. FURMAN, United States District Judge:**

       Plaintiff Maria Stuart brings suit against Defendant T-Mobile USA, Inc. ("T-Mobile")

pursuant to the Family and Medical Leave Act ("FMLA" or the "Act"), 29 U.S.C. § 2601 *et seq.*,

which "gives eligible employees an 'entitlement' to twelve workweeks per year of unpaid leave

'[b]ecause of a serious health condition that makes the employee unable to perform the functions

of the position of such employee.'" *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir.

2006) (quoting 29 U.S.C. § 2612(a)(1)(D)).  In particular, Stuart alleges that T-Mobile interfered

with her rights under the FMLA and retaliated against her for talking leave guaranteed by the

Act.  She also brings suit against T-Mobile and two of its employees, David Myers and Donna

Cohen (collectively, "Defendants"), pursuant to the New York City Human Rights Law

("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, alleging that Defendants discriminated

against her on the basis of her disability, that Defendants retaliated against her for taking FMLA-

protected leave, and that Defendants Myers and Cohen aided and abetted the discrimination and

retaliation.  Now before the Court is Defendants' motion for summary judgment.  For the reasons

that follow, Defendants' motion is granted.

## BACKGROUND

Plaintiff was hired by T-Mobile in 2007 as a "sales support coordinator" in T-Mobile's Manhattan office.  (Pl.'s Resp. Defs.' 56.1 Statement & Counterstatment of Facts (Docket No. 27) ("Pl.'s 56.1 Statement") ¶ 1).  She received at least one promotion while at T-Mobile.  (Pl.'s 56.1 Statement ¶ 2).  In April 2012, following her fiancé's suicide, Plaintiff took medical leave under the FMLA to get treatment for depression and post-traumatic stress disorder.  (Pl.'s 56.1 Statement ¶ 18).  In June and July 2012, she requested, and received, two additional extensions of her leave through August 1, 2012, even though that extended her leave two weeks beyond the twelve weeks provided by the FMLA.  (Pl.'s 56.1 Statement ¶¶ 19-21).  In March 2013, Plaintiff requested, and received, an additional month of FMLA leave.  (Pl.'s 56.1 Statement ¶ 22).  Finally, on May, 23 2013, Stuart requested permission to take intermittent leave — one day a week — so that she could attend weekly therapy sessions.  (Pl.'s 56.1 Statement ¶ 23).  T-Mobile granted her request on June 24, 2015.  (Pl.'s 56.1 Statement ¶ 23).

On or about June 10, 2013, Plaintiff also asked Defendant Cohen, Myers's supervisor, for permission to work from home on the days when she had therapy appointments.  (Pl.'s 56.1 Statement ¶ 24).  Plaintiff then had a meeting with Cohen and Michael Tayag, a member of T-Mobile's human resources department, the purpose of which was to discuss Plaintiff's request to work remotely.   (Decl. Robert S. Whitman Supp. Defs.' Mot. Summ. J. (Docket No. 25) ("Whitman Decl."), Ex. E ("Tayag Dep.") 44, 52-53, 79-80; *id.*, Ex. D ("Cohen Dep.") 198, 200).  Following the meeting, T-Mobile denied Plaintiff's request on the grounds that it violated the company's policy against hourly employees working from home and because it was made directly to Cohen rather than to T-Mobile's Leave of Absence team, which handles requests for medical accommodations.  (Pl.'s 56.1 Statement ¶ 25).  Nevertheless, Tayag informed Plaintiff

during a subsequent conversation that she was free to seek additional FMLA leave so that she

could attend her appointments.  (Tayag Dep. 53-54).

On June 5, 2013, a few days prior to Plaintiff's request to work from home, an unnamed

T-Mobile employee contacted Defendant Myers asking about Stuart's whereabouts.  (Pl.'s 56.1

Statement ¶ 27).  The inquiry apparently occurred between the hours of 8:30 a.m. and 5:30 p.m.

(Eastern Time) — Plaintiff's regular hours.  (Pl.'s 56.1 Statement ¶¶ 26-27).  Myers, who

worked out of a T-Mobile office in California, noticed that Stuart was not logged into the

company's internal messaging software and asked another employee to check whether she was in

the office. (Pl.'s 56.1 Statement ¶ 27).  At around 10:20 a.m., Myers was notified that Stuart had

just arrived in the office.  (Pl.'s 56.1 Statement ¶ 28).  Stuart had not notified T-Mobile that she

would be arriving late that day.  (Pl.'s 56.1 Statement ¶ 29).

Shortly thereafter, when Myers conducted his regular review of his employees' weekly

time sheets, he noticed that Stuart had reported arriving at 8:20 a.m. on June 5, 2013.  (Pl.'s 56.1

Statement ¶ 30).  Myers then notified the human resources department, which began an

investigation into Plaintiff.  The company compared Plaintiff's self-reported hours with the time

recorded when she swiped her badge at the company's security system over the prior thirty days.

(Pl.'s 56.1 Statement ¶ 31).  The investigation revealed a discrepancy of 3,360 minutes (that is,

more than fifty hours) between Plaintiff's self-recorded time and the times recorded by her

security badge.  (Pl.'s 56.1 Statement ¶ 34).  For purposes of comparison, T-Mobile performed

the same exercise for two of Plaintiff's peers, Natalia Delamori and Joseph Luciano, which

revealed much smaller discrepancies of 103 and 420 minutes, respectively.  (Pl.'s 56.1 Statement

¶¶ 31-33).  When asked to explain these discrepancies, Plaintiff submitted a written statement

that asserted, in its entirety, "I work an eight hour shift per day and document it as a set time

daily on my timesheet.  In the end, eight hours are recorded based on what I've worked."  (Pl.'s 56.1 Statement ¶ 35; Whitman Decl. Ex. X).  Plaintiff declined a request for a more detailed statement, choosing to rely solely on the response discussed above.  (Pl.'s 56.1 Statement ¶ 36).  On June 25, 2015, Plaintiff was then terminated for time card fraud.  (Pl.'s 56.1 Statement ¶ 37).  Thereafter, Plaintiff filed this lawsuit.  (Docket No. 1).

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam).  A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56-57 (2d Cir. 2012).  The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In cases such as this one, in which the non-movant bears the burden of proof at trial, "the movant may point to evidence that negates its opponent's claims or . . . identify those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact, a tactic that requires identifying evidentiary insufficiency and not simply denying the opponent's pleadings."  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006) (citing *Celotex*, 477 U.S. at 323).

It is well established that the Court must construe all evidence in the light most favorable to the non-movant, *see LaBounty v. Coughlin*, 137 F.3d 68, 71 (2d Cir. 1998) (citing *Anderson*, 477 U.S. at 247-48), which requires "drawing all reasonable inferences in [the non-movant's] favor," *Nicholas v. Miller*, 189 F.3d 191, 193 (2d Cir. 1999) (per curiam) (internal quotation

4

marks omitted).  To defeat a summary judgment motion, however, the non-movant must proffer more than a "scintilla of evidence" in support of his version of events, *Anderson*, 477 U.S. at 252, and raise more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

Plaintiff asserts claims under the FMLA against T-Mobile alone, and under the NYCHRL against all Defendants.  The Court considers these claims in turn.

**A.     FMLA Claims**

As noted, the FMLA gives eligible employees an "entitlement" to twelve workweeks per year of unpaid leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); *see Sista*, 445 F.3d at 174.  To protect that entitlement, the Act "makes it illegal for employers to: (1) 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right' provided under the FMLA; or (2) 'discharge or in any other manner discriminate against any individual for opposing any practice made unlawful' by the FMLA," *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 462 (S.D.N.Y. 2011) (quoting 29 U.S.C. § 2615(a)), and "creates a private right of action to seek both equitable relief and money damages against any employer" that "interfere[s] with, restrain[s], or den[ies] the exercise of FMLA rights," *Nevada Dept. of Human Resources v. Hibbs*, 538 U.S. 721, 724-25 (2003) (internal citations and quotations omitted).  Thus, a plaintiff may bring two kinds of claims under the FMLA: a claim based on "interference" with his or her rights under the Act and a claim based on "retaliation" for his or her exercise of rights under the Act.  *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) (per curiam).  Here,

Plaintiff asserts both interference and retaliation claims, which the Court must address separately.

### 1. Plaintiff's Interference Claims

As noted, the FMLA makes it unlawful "for any employer to interfere with . . . the exercise of or the attempt to exercise, any right" provided by the Act.  29 U.S.C. § 2615(a)(1). To establish a *prima facie* case of interference in violation of the FMLA, a plaintiff must show that (1) she is an "eligible employee" within the meaning of the FMLA; (2) the employer is an "employer" as defined in the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave notice to the employer of her intention to take leave; (5) she was denied benefits to which she was entitled under the Act.  *See DeAngelo v. Yellowbook Inc.*, — F. Supp. 3d —, No. 3:12-CV-520 (GWC), 2015 WL 1915641, at *14 (D. Conn. Apr. 27, 2015) (citing cases); *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 465 (S.D.N.Y. 2011); *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004); *Bond v. Sterling, Inc.*, 77 F. Supp. 2d 300, 306 (N.D.N.Y. 1999).  Thus, whatever the nature of the alleged interference, a plaintiff can establish a violation of the Act only if the employer's actions "ultimately result in the denial of a benefit under the FMLA."  *DeAngelo*, 2015 WL 1915641, at *14 (citing *Ridgeway v. Royal Bank of Scotland Grp.*, No. 3:11-CV-976 (VLB), 2012 WL 1033532, at *6 (D. Conn. Mar. 27, 2012)); *Willoughby v. Conn. Container Grp.*, No. 3:11-CV-00992 (CSH), 2013 WL 6198210, at *20 n.6 (D. Conn. Nov. 27, 2013); *see also Cunha v. Winncompanies*, No. 3:13-CV-01789, 2014 WL 2871588, at *2-3 (D. Conn. June 24, 2014) (citing cases for the proposition that a plaintiff must prove that he or she was prejudiced to maintain an interference claim under the FMLA). "Substantive rights under the FMLA subject to interference claims include the right to take leave, receive benefits during leave and be restored to the same or equivalent position following

leave." *Gauthier v. Yardney Technical Prods., Inc.*, No. 3:05-CV-1362 (VLB), 2007 WL

2688854, at *4 (D. Conn. Sept. 13, 2007).

        Here, it is undisputed that Plaintiff satisfies the first four elements of an interference

claim, but there is no evidence that she was denied a benefit to which she was entitled under the

FMLA as T-Mobile approved each and every request for leave that she made.[1]  In fact, T-Mobile

went above and beyond its obligations under the Act and provided Plaintiff with additional leave

beyond the twelve workweeks to which she was entitled.  (Mem. Law Supp. Defs.' Mot. Summ.

J. (Docket No. 24) ("Defs.' Mem.") 4).  And while "discouraging an employee from using

[FMLA] leave" may qualify as interference under the Act, 29 C.F.R. § 825.220(b), there is no

evidence in the record that Plaintiff "tried to assert her FMLA rights and was thereafter

discouraged from taking FMLA leave," which is necessary to establish an interference claim on

a discouragement theory.  *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 535 (S.D.N.Y. 2009).

Plaintiff does assert in conclusory fashion that she felt pressured to come back early from her

medical leave (Pl.'s Mem. 8; Whitman Decl., Ex. B ("Stuart Dep.") 143-45), but she

conspicuously fails to identify a single instance in which she delayed or cut short her leave as a

result of Defendants' actions.  (Stuart Dep. 143-45).  And, in any case, she does not dispute that

she received the full twelve workweeks of leave to which she was entitled under the FMLA.  It

follows that her interference claim fails as a matter of law.  *See, e.g.*, *Sarno v. Douglas Elliman-

Gibbons & Ives, Inc.*, 183 F.3d 155, 161-62 (2d Cir. 1999) (holding that the plaintiff failed to

establish an interference claim because he had received the twelve workweeks of leave to which

he had been entitled); *De Oliveira v. Cairo-Durham Cent. Sch. Dist.*, No. 1:11-CV-393

---

[1]      Although Plaintiff's request to work from home was denied (Pl.'s 56.1 Statement ¶ 24),
she does not contend that this constituted the denial of any right she was guaranteed under the
FMLA.  (Pl.'s Mem. Law Opp'n Defs.' Mot. Summ. J. (Docket No. 26) ("Pl.'s Mem.") 8-9).

(NAM/RFT), 2014 WL 4900403, at *19 (N.D.N.Y. Sept. 30, 2014) (granting summary judgment with respect to the plaintiff's claim of interference on a discouragement theory because, among other things, the plaintiff had "adduce[d] no evidence showing that [the defendant] discouraged her in any way from utilizing her FMLA leave"); *Bond*, 77 F. Supp. 2d at 306 ("Since Plaintiff was given the leave which she requested and was entitled to under the FMLA (a fact she does not dispute), her claim . . . that defendants interfered with that right must be dismissed"); *see also, e.g.*, *Geromanos*, 322 F. Supp. 2d at  428  ("Because plaintiff received the full twelve weeks of leave as allowed by the act, the only other right with which Columbia could be found to have interfered is the right to reinstatement at the end of her leave."); *cf. Roberts v. AIG Global Inv. Corp.*, No. 06-CV-5966 (GEL), 2008 WL 4444004, at *5 (S.D.N.Y. Sept. 30, 2008) (denying summary judgment where there was evidence that the plaintiff had taken his FMLA leave later than he wanted due to the defendants' discouragement).

Above and beyond that fatal defect, most of Plaintiff's arguments with respect to her interference claim suffer from more basic flaws.  She contends that during her initial FMLA leave in 2012, Myers "made comments to other employees about his dislike when Plaintiff would take time off for medical leave."  (Pl.'s Mem. 8).  But she does not cite any firsthand accounts of Myers's statements or claim that any of the statements were made directly to her. (*See* Pl.'s Mem. at 8-9).  Thus, there is no admissible evidence in the record that Myers made the comments about which Plaintiff complains.  Plaintiff also points to various e-mails sent by Myers as evidence that he tried to "influence or otherwise deter Defendant T-Mobile from granting Ms. Stuart's requests" for FMLA leave.  (Pl.'s Mem. 9-10; Mesidor Decl., Ex. J at 1459, 1463).  For instance, she cites an e-mail that Myers sent to Cohen and two other T-Mobile employees, requesting a telephone call to discuss the "impact on the business" of Stuart's

8

intermittent leave.  (Pl.'s Mem. 10; Mesidor Decl., Ex. K at 1328).  It is perfectly reasonable,

however, for a supervisor to discuss how to manage an employee's regular leave, and there is

nothing about the phrase "impact on the business" that could reasonably connote hostility toward

Stuart.  And in any event, Plaintiff was not copied on any of the e-mails that she cites, and she

provides no evidence that she was aware of them prior to discovery in this case.  (In fact,

Plaintiff states that the e-mails were "[i]n addition to the . . . comments and tactics made *directly*

to Plaintiff*," strongly suggesting that she did not have direct personal knowledge of the

comments.  (Pl.'s Mem. 10 (emphasis added)).)  Absent such evidence, there is no basis to

conclude that Myers's emails could have discouraged Plaintiff from using her FMLA leave.

Plaintiff also appears to contend that Myers harassed her, including by asking whether the

father of her child paid his child support.  (Pl.'s Mem. 8-9; Defs.' Resp. Pl.'s Local Civ. R. 56.1

Statement (Docket No. 30) ("Defs.'56.1 Resp.") ¶ 27)).  Whatever the propriety of such

comments, however, Plaintiff makes no effort to explain how they would have discouraged her

from pursuing her rights under the FMLA.  *See, e.g.*, *Di Giovanna v. Beth Israel Med. Ctr.*, 651

F. Supp. 2d 193, 200 (S.D.N.Y. 2009) (holding that a supervisor's "'barrages of questions' about

[the plaintiff's] father's condition at 'inappropriate times'" would not have a dissuaded an

employee of ordinary resolve from exercising his or her rights under the FMLA).  Finally,

Plaintiff contends that Myers interfered with her leave by subjecting her to additional

"surveillance."  (Pl.'s Mem. 10).  The only evidence she presents of such additional surveillance,

however, is a statement in her deposition that Jenelle Washington told her that Myers had told

Washington to go to her desk to check whether she was present.  (Stuart Dep. 144-46).

Plaintiff's recitation of Washington's statement, however, is rank hearsay and therefore cannot

defeat a motion for summary judgment.  *See, e.g.*, *Capobianco v. City of N.Y.*, 422 F.3d 47, 55

(2d Cir. 2005) ("[I]nadmissible hearsay [is] an insufficient basis for opposing a motion for summary judgment."); *Di Giovanna*, 651 F. Supp. 2d at 202 (granting summary judgment for defendants on an FMLA interference claim that was supported only by hearsay statements in the plaintiff's deposition). And more fundamentally, T-Mobile cannot be said to have interfered with Plaintiff's rights under the FMLA by checking on whether she was present during her regular working hours.

### 2.  Plaintiff's Retaliation Claim

That leaves Plaintiff's retaliation claim under the FMLA. Retaliation claims under the Act are evaluated under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Potenza v. City of N.Y.*, 365 F.3d 165, 168 (2d Cir. 2004). Under that framework, the plaintiff has "the initial burden of establishing a prima facie case of discrimination." *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1345 (2015) (internal quotation marks omitted). Specifically, a plaintiff must point to evidence indicating that (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *See Potenza*, 365 F.3d at 168. If the plaintiff carries that burden, "the employer [then has] an opportunity 'to articulate some legitimate, non-discriminatory reasons for' the difference in treatment. If the employer articulates such reasons, the plaintiff then has 'an opportunity to prove by a preponderance of the evidence that the reasons were a pretext for discrimination.'" *Young*, 135 S. Ct. at 1341 (quoting *McDonnell Douglas*, 411 U.S. at 802, and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)) (internal citations omitted). At the third stage of the *McDonnell Douglas* framework, the question is whether the plaintiff has "adduced

admissible evidence that would permit a reasonable jury to find that h[er] termination was motivated by having filed for . . . leave under the FMLA," rather than the justification provided by the employer.  *Di Giovanna*, 651 F. Supp. 2d at 205.

Here, assuming *arguendo* that Plaintiff has established a *prima facie* case of retaliation, T-Mobile has undeniably satisfied its burden of articulating a legitimate, non-discriminatory reason for Plaintiff's termination — namely, its determination that Plaintiff falsified her time records.  (Mem. Law Supp. Defs.' Mot. Summ. J. (Docket No. 24) ("Defs.' Mem.") 5-6; Defs.' Reply Mem. 4-6; Pl.'s 56.1 Statement ¶ 34).  The company's timekeeping policy provides that an employee "must enter [his or her] actual time worked (not time scheduled) to the nearest minute . . . [and that each employee] must record all time worked to the minute," and it expressly warns that "[f]alsification of time records . . . may lead to termination."  (*Id.* ¶ 15).  Based on the large discrepancy between her time entries and her badge swipes, T-Mobile concluded that Plaintiff had done just that.  That is more than enough to satisfy T-Mobile's burden of production at the second stage of the *McDonnell Douglas* framework.  *See, e.g.*, *Inguanzo v. Hous. & Servs., Inc.*, No. 12-CV-8212 (ER), 2014 WL 4678254, at *20 n.44 (S.D.N.Y. Sept. 19, 2014) (finding falsification of records to be a legitimate, nondiscriminatory basis for termination); *Brown v. The Pension Bds.*, 488 F. Supp. 2d 395, 406 (S.D.N.Y. 2007) (finding that an employer had articulated a legitimate, nondiscriminatory reason for termination because "an employer is entitled to discharge an employee who fails to follow company rules" (internal quotation marks omitted)); *Costello v. St. Francis Hosp.*, 258 F. Supp. 2d 144, 155 (E.D.N.Y. 2003) ("An employee's falsification of a time sheet can constitute a legitimate, nondiscriminatory reason for terminating an employee.").

Thus, summary judgment turns on whether Stuart has "adduced admissible evidence that would permit a reasonable jury to find that h[er] termination was motivated by having filed for . . . leave under the FMLA," rather than the justification provided by T-Mobile. *Di Giovanna*, 651 F. Supp. 2d at 205. She has not. Stuart points first to the evidence that T-Mobile discouraged her from taking leave, which was discussed above in reference to the interference claim. (Pl.'s Mem. 11). As discussed, however, most of that evidence is inadmissible. And in any event, it sheds no light on the ultimate decision to terminate Stuart. Simply put, no reasonable jury could infer from the alleged "additional surveillance" ordered by Myers, the fact that Myers told Plaintiff that she would not receive coverage while she was out, or the fact that Myers once inquired about the "impact on [the] business" of Stuart's absences, that T-Mobile's explanation for terminating her was pretextual. *See O'Reilly v. Consol. Edison Co. of New York*, 173 F. App'x 20, 22-23 (2d Cir. 2006) (summary order) (finding no evidence of pretext based on a decision to surveil an employee suspected to be collecting sick leave under false pretenses); *Bowman v. CSX Transp., Inc.*, 22 F. Supp. 3d 181, 194 (N.D.N.Y. 2014) (holding that a supervisor's genuine concerns about the performance and actions of an individual using FMLA leave is not "evidence that [the defendant] negatively viewed [the plaintiff's FMLA] leave"); *Housel v. Rochester Inst. of Tech.*, 6 F. Supp. 3d 294, 309 (W.D.N.Y. 2014) (granting summary judgment for the defendant where allegedly hostile comments did not indicate "an actual *causal link* between the Plaintiff's requests for accommodations and the alleged adverse employment actions").[2]

---

[2]   Plaintiff's memorandum of law could also be read to suggest that the testimony given by T-Mobile employees regarding Myers's surveillance of Plaintiff was "suspicious" or not credible. (Pl.'s Mem. 12). Merely asserting that T-Mobile's witnesses are not credible, however, is insufficient to survive summary judgment on a claim for which Plaintiff bears the burden of proof. *Cf. Goenaga v. March Of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (holding

Second, Plaintiff contends there were flaws in T-Mobile's investigation.  (Pl.'s Mem. 11-12).  For example, she notes that T-Mobile did not review the electronic "messenger application to see if indeed Plaintiff was working offsite" and did not credit Plaintiff's testimony over the records created by her swipe badge.  (Pl.'s Mem. 11-12).  On their own terms, however, these arguments are thoroughly unpersuasive.  If Plaintiff had been working offsite on the days in question, her badge swipes would not have shown any entries whatsoever.  And when confronted about the discrepancy, Plaintiff did not proffer her current explanations; instead, she provided only a perfunctory general explanation of her timekeeping practices.  (Pl.'s 56.1 Statement ¶ 35).  More fundamentally, even if there were flaws in T-Mobile's investigation, Plaintiff provides no reason to believe that they were the product (or evidence) of discrimination.  Given that, whether T-Mobile conducted a thorough investigation, or correctly concluded that Plaintiff had falsified her time records, is ultimately beside the point.  *See Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 112 (S.D.N.Y. 2009) ("[I]n the absence of evidence that Defendants acted in bad faith, failed to follow their ordinary disciplinary procedures or treated other employees differently — proof that is completely lacking here — complaints about the adequacy of [the] investigation [leading to the plaintiff's termination], even if accepted as true, cannot show pretext or defeat a summary judgment motion."); *Maturine v. Am. Int'l Grp., Inc.*, No. 04-CV-9064 (GBD), 2006 WL 3206098, at *6 (S.D.N.Y. Nov. 6, 2006) ("Even if it were shown that plaintiff did not in fact commit the misconduct for which he was fired, that alone does not suggest that the reason for his discharge was pretextual."); *see also Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (quoting *Simms v. Oklahoma ex rel Dep't of*

---

that the party opposing summary judgment "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible").

*Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999) for the proposition that "[a court's] role is to prevent unlawful hiring practices, not to act as a superpersonnel department that second guesses employers' business judgments").

Ultimately, the strongest evidence Plaintiff can proffer of pretext is the fact that she "was terminated one day after her third FMLA leave was approved." (Pl.'s Mem. 11). But temporal proximity, without more, is insufficient to establish pretext. *See, e.g., El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext."); *Bond*, 77 F. Supp. 2d at 305 (stating that proximity in time between FMLA leave and an alleged adverse action "is insufficient, in and of itself, to support" a claim of retaliation). And here, there is no basis to conclude that the temporal proximity between approval of Plaintiff's request for leave and her termination was anything but a coincidence. It was not until early June 2013 that Myers had any reason to suspect Plaintiff of falsifying her timekeeping records. T-Mobile promptly investigated and, when Plaintiff was unable to provide a satisfactory explanation for the large discrepancy in her time, immediately fired her. To suggest that an employer could not take those actions merely because its employee had, around the same time, requested (and received approval to take) FMLA leave would amount to granting employees who request FMLA leave immunity from disciplinary action for legitimate, non-discriminatory reasons.[3] That is not the purpose of the Act. *See, e.g., Byrnie*,

---

[3]     In discussing Plaintiff's temporal-proximity argument, Defendants suggest that the relevant time period is between May 23, 2013, when she requested intermittent leave, and June 25, 2013, when she was terminated. (Defs.' Mem. 7). As noted above, Plaintiff's temporal proximity argument focuses instead on the one day between when her leave request was

243 F.3d at 103 (holding that the FMLA does not empower courts to second guess legitimate business decisions); *see also Serby v. N.Y.C. Dep't of Educ.*, 526 F. App'x 132, 134 (2d Cir. 2013) (holding that the FMLA did not protect the plaintiff from termination based on her failure to meet the employers standards regarding "educational policy"). Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's FMLA retaliation claim is also granted.

## B.     NYCHRL Claims

Next, Plaintiff brings claims under the NYCHRL, principally for disability discrimination, for failure to engage in an interactive process over how to accommodate her disability, and for retaliation. (Pl's Mem. 13-18).[4] The FMLA and "the NYCHRL are similar in nature," but "they are not coextensive." *Cf. Brooklyn Ctr. for Independence of Disabled*, 980 F. Supp. 2d at 642 (discussing the similarity between the NYCHRL and federal burden-shifting statutes and citing *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)). In enacting the current version of the NYCHRL, the New York City Council "expressed the view that the NYCHRL had been 'construed too narrowly' and therefore 'underscore[d] that the

---

approved and when she was terminated. (Pl.'s Mem. 9). In either case, Plaintiff's argument fails because there is no evidence to support a finding of pretext other than temporal proximity.

[4]     As a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). In this case, however, there is a solid basis to depart from that general rule and to exercise supplemental jurisdiction over Plaintiff's NYCHRL claims. Those claims arise from the same "nucleus of operative fact" as the FMLA claims, *Gibbs*, 383 U.S. at 725, and the legal analysis for both sets of claims is similar, *see Brooklyn Ctr. for Independence of Disabled v. Bloomberg*, 980 F. Supp. 2d 588, 642 (S.D.N.Y. 2013). In addition, because the parties have completed discovery, it would waste significant resources — both on the part of the parties and the courts — to make them begin again at square one in state court. *See Bak v. Metro-N. RR. Co.*, No. 12-CV-3220 (TPG), 2015 WL 1757035, at *4 (S.D.N.Y. Apr. 16, 2015) (exercising supplemental jurisdiction largely because the parties had already devoted significant resources to the case, "including exchanging large volumes of discovery material and conducting lengthy depositions"). Accordingly, the Court will address Plaintiff's NYCHRL claims on the merits.

provisions of New York City's Human Rights Law are to be construed independently from similar or identical provisions of . . . [the] federal statutes.'" *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (quoting Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85 § 1).  The NYCHRL provides that the rights available under federal employment statutes, such as the FMLA, are to be treated as a floor for the rights created under the New York City Administrative Code.  *See Mihalik*, 715 F.3d at 109; *Loeffler*, 582 F.3d at 278 (describing applicable federal and state employment statutes "as a *floor* below which the City's Human Rights law cannot fall" (quoting N.Y.C. Local L. No. 85 § 1)). "Thus, even if the challenged conduct is not actionable under federal . . . law, federal courts must consider separately whether it is actionable under the broader New York City standards." *Mihalik*, 715 F.3d at 109.  With these principles in mind, the Court turns to each of Plaintiff's claims against Defendants under the NYCHRL.

### 1. Plaintiff's NYCHRL Discrimination Claim

The Court begins with Plaintiff's discrimination claim.  The NYCHRL prohibits "an employer or an employee or agent thereof, because of [an] actual or perceived . . . disability . . . to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."  N.Y.C. Admin. Code § 8-107(1)(a).  Although "[i]t is unclear whether, and to what extent, the *McDonnell Douglas* burden-shifting analysis has been modified for NYCHRL claims," *Mihalik*, 715 F.3d at 110 n.8, courts in the Second Circuit typically apply the "liberal standards [of the NYCHRL] to the basic *McDonnell Douglas* framework," *Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217 (RJS) (JLC), 2013 WL 6231615, at *15 (S.D.N.Y. Dec. 2, 2013) (collecting cases); *see Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010).  Thus, if the

plaintiff establishes a *prima facie* case of discrimination, and the defendant articulates a legitimate, non-discriminatory reason for the adverse employment action,  "the burden shifts back to the plaintiff to prove discrimination," which can be met, for example, "by showing that the employer's proffered reason is pretextual."  *Raspardo v. Carlone*, 770 F.3d 97, 125 (2d Cir. 2014) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

As with her FMLA retaliation claim, even assuming *arguendo* that Plaintiff has established a *prima facie* case of disability discrimination, Plaintiff cannot satisfy her ultimate burden here.  In fact, the only argument that Plaintiff makes in support of her discrimination claim is that other T-Mobile employees were allowed to work from home while her request to do so was denied.  (Pl.'s Mem. 13-14).  But Plaintiff does not point to any *admissible* evidence showing that similarly situated employees were granted permission to work from home.  She asserts that two other T-Mobile employees, Janaya Day and Natalia Delamori, told her that they were permitted to work from home.  (Pl.'s Mem. 13-14).  In both cases, however, Plaintiff cites only her own account of what these individuals told her (Stuart Dep. 209-10, 214) — which is plainly hearsay and therefore not appropriate for consideration in connection with a motion for summary judgment.  *See Capobianco*, 422 F.3d at 55.  In addition, Plaintiff asserts that Defendant Cohen told her that another unnamed employee had been granted approval to work at home.  (Pl.'s Mem 13-14; Stuart Dep. 162).  But without any evidence to support the conclusion that that unnamed employee was similarly situated to Plaintiff, the mere fact that one other employee was granted leave while Plaintiff was not is plainly insufficient to establish that Defendants treated her differently because of her alleged disability.  Accordingly, Defendants' motion for summary judgment on Plaintiff's NYCHRL discrimination claim is granted.

### 2.   Failure-To-Accommodate Claim

Next, Plaintiff alleges that Defendants failed to engage in an interactive process regarding reasonable accommodations for her disability.  (Pl.'s Mem. 14-15).  "In general, under [the NYCHRL], an employer is obligated to engage a disabled employee in a 'good faith interactive process' to identify a reasonable accommodation that will permit the employee to continue in the position."  *Romanello v. Intesa Sanpaolo S.p.A.*, 97 A.D.3d 449, 451 (N.Y. App. Div. 1st Dept. 2012), *aff'd as modified*, 22 N.Y.3d 881 (2013).  "[T]he first step in providing a reasonable accommodation is to engage in a good faith interactive process that assesses the needs of the disabled individual and the reasonableness of the accommodation requested."  *Phillips v. City of N.Y.*, 66 A.D.3d 170, 176 (N.Y. App. Div. 1st Dept. 2009), *overruled on other grounds by Jacobsen v. NYC Health and Hosp. Corp.*, 22 N.Y.3d 824 (N.Y. 2014).  New York courts have held that the failure to engage in an interactive process is itself a violation of the law and gives rise to an independent claim.  *Phillips*, 66 A.D.3d at 176; *see Vangas v. Montefiore Med. Ctr.*, 6 F. Supp. 3d 400, 420 (S.D.N.Y. 2014) ("[U]nder the . . . NYCHRL, an employer's failure to engage in the interactive process is itself a violation of the law."); *Morse v. JetBlue Airways Corp.*, 941 F. Supp. 2d 274, 302 n.16 (E.D.N.Y. 2013) (same).

In this case, no reasonable jury could conclude that Defendants failed to engage in an interactive process to identify a reasonable accommodation.  Plaintiff requested to work from home so that she did not have to expend significant time commuting to and from Manhattan in order to attend therapy appointments near her home on Long Island.  (Pl.'s 56.1 Statement ¶ 24; Defs.' Mem. 13).  Plaintiff's memorandum of law, however, includes only two sentences detailing Defendants' alleged failure to engage an interactive process: "Defendants never engaged in an interactive process with Plaintiff to ascertain if she could be accommodated in

some other way.  Nor did Defendants indicate that Plaintiff's request was somehow an undue

burden."  (Pl.'s Mem. 14-15).  These two conclusory sentences, unsupported by any citation to

the record, are insufficient to create a genuine dispute of fact.  *See, e.g.*, *Pucino v. Verizon*

*Wireless Commc'ns, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010) ("[P]urely conclusory allegations of

discrimination that are devoid of concrete particulars do not suffice to avoid summary

judgment."  (internal quotation marks omitted)); *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d

Cir. 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are

insufficient to defeat a properly supported motion for summary judgment.").

Moreover, the record is replete with evidence that Defendants *did* in fact engage in an

interactive process.  *See Vangas*, 6 F. Supp. 3d at 420 (describing an "interactive process" as one

that "may involve a meeting with the employee who requests an accommodation, requesting

information about the condition and what limitations the employee has, asking the employee

what he or she specifically wants, showing some sign of having considered the employee's

request, and offering and discussing available alternatives when the request is too burdensome"

(internal quotation marks omitted)).  Michael Tayag, a member of T-Mobile's human resources

department, testified that he participated in a telephone call with Plaintiff and Defendant Cohen

to address Plaintiff's request to work from home one day a week.  (Tayag Dep. 45-46; Cohen

Dep. 198, 200).  Tayag testified that the T-Mobile employees "tr[ied] to get clarification" on the

reasons behind Stuart's request.  (Tayag Dep. 49-50).  Following that discussion, T-Mobile

denied Plaintiff's leave request on the ground that it contravened the company's policy of

generally prohibiting hourly employees from working from home because of the difficulty in

tracking their hours.  (Pl.'s 56.1 Statement ¶ 17; Tayag Dep. 44-45, 52-53, 79-80; Cohen Dep.

198, 200 (stating that Stuart's request was evaluated during the meeting and it was determined

her request "was not an actual request to work from home.  It was a request to go to doctor appointments during work hours.  So Michael then told her that that is not actually working from home, that's going to doctor appointments during work hours and she would need to submit for an intermittent leave, which she did and was approved for.")).  Even so, Tayag had another conversation with Plaintiff shortly thereafter in which he explained T-Mobile's reasons for denying her request and suggested that Plaintiff could seek medical leave under the FMLA. (Tayag Dep. 53-54).  At that point, T-Mobile had already granted a request from Plaintiff to take intermittent FMLA leave (Pl.'s 56.1 Statement ¶ 23), and there is no reason to believe that T-Mobile would not have been granted another request for FMLA leave had Plaintiff's timekeeping incident not intervened.

This testimony, coupled with Plaintiff's complete lack of contrary evidence, is sufficient to entitle Defendants to summary judgment.  After all, the NYCHRL requires only that Defendants engage in an interactive process with the disabled individual; it does not require that the individual be satisfied with that process or that the process result in the individual's preferred accommodation.  *See Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) ("[T]o avoid . . . liability, the employer need not offer the accommodation the employee prefers."); *Porter v. City of N.Y.*, 128 A.D.3d 448, 449 (N.Y. App. Div. 1st Dept. 2015) (observing that the defendants had satisfied their statutory obligation under the NYCHRL by engaging in the interactive process and that they "were not required to provide plaintiff with the specific accommodation she preferred").  Put simply, the record indicates that Plaintiff was afforded a meeting to discuss her request and that there was a back and forth between her and T-Mobile.  The fact that the company advised her to pursue an alternative accommodation does not constitute a violation of

the NYCHRL.  Accordingly, Defendants' motion for summary judgment on Plaintiff's

NYCHRL failure-to-engage claim is also granted.

### 3.  NYCHRL Retaliation Claims

Plaintiff's third substantive claim under the NYCHRL can be addressed relatively briefly.

Stuart asserts that T-Mobile retaliated against her "for being disabled and for taking time off

under the FMLA."  (Pl.'s Mem. 15).  Under the NYCHRL, Plaintiff may prevail on a retaliation

claim if she can prove that "she took an action opposing her employer's discrimination . . . and

that, as a result, the employer engaged in conduct that was reasonably likely to deter a person

from engaging in such action."  *Mihalik*, 715 F.3d at 112; *see* N.Y.C. Admin. Code, § 8-107(7)

(providing, in part, that "[i]t shall be an unlawful discriminatory practice for any person engaged

in any activity to which this chapter applies to retaliate or discriminate in any manner against any

person because such person has . . . opposed any practice forbidden under this chapter").  In this

case, Plaintiff's claim founders at the first step, as she cannot identify any instance in which she

opposed a practice forbidden by the NYCHRL.  Plaintiff asserts that "Defendants terminated

[her] employment in retaliation for being disabled and for taking time off under the FMLA."

(Pl.'s Mem. 15).  Neither of these alleged bases for retaliation, however, constitutes a protected

activity under the NYCHRL.  *See, e.g.*, *See Sotomayor v. City of N.Y.*, 862 F. Supp. 2d 226, 262

(E.D.N.Y. 2012) ("While [the plaintiff] alleges that she was retaliated against for taking FMLA

leave, this is not a 'protected activity' under . . . the NYCHRL"), *aff'd*, 713 F.3d 163 (2d Cir.

2013); *Mi-Kyung Cho v. Young Bin Cafe*, 42 F. Supp. 3d 495, 508 (S.D.N.Y. 2013) (finding that

an employee's request for workers compensation could not be the basis for a retaliation claim

"because [the request] does not constitute an opposition or complaint about unlawful

discrimination"); *Brook v. Overseas Media, Inc.*, 69 A.D.3d 444, 445 (N.Y. App. Div. 1st Dept.

2010) ("Even when the complaint is liberally construed to allege that plaintiff's employment was terminated in retaliation for requesting an accommodation for her disability, it does not state a cause of action [under a retaliation theory] because it fails to allege that she opposed her employer's discriminatory failure to make reasonable accommodation.").  Accordingly, Plaintiff's NYCHRL retaliation claim must also be dismissed.

### 4.  Aider-and-Abettor and Employer Liability Claims

Finally, Plaintiff asserts claims under the NYCHRL against Myers and Cohen for aiding and abetting discrimination and against T-Mobile on the theory that, as their employer, it is strictly liable for their violations.  (Pl.'s Mem. 16-19.)  It is well established, however, that a plaintiff cannot maintain such claims in the absence of an underlying violation of the NYCHRL. *See, e.g.*, *Dillon v. Ned Mgmt., Inc.*, No. 13-CV-2622 (JBW), 2015 WL 427921, at *12 (E.D.N.Y. Feb. 2, 2015) (stating that, "before an individual may be considered an aider and abettor, liability must first be established as to the employer" (internal quotation marks omitted)); *Aiossa v. Bank of Am., N.A.*, No. 10-CV-1275 (JS) (ETB), 2012 WL 4344183, at *5 (E.D.N.Y. Sept. 21, 2012) ("As Plaintiff has not established an underlying violation of . . . the NYCHRL, her aiding and abetting claims . . . also fail."), *aff'd*, 538 F. App'x 8 (2d Cir. 2013); *Jain v. McGraw-Hill Companies, Inc.*, 827 F. Supp. 2d 272, 276-77 (S.D.N.Y. 2011) (similar), *aff'd*, 506 F. App'x 47 (2d Cir. 2012).  Thus, because Plaintiff's underlying claims fail as a matter of law, her aiding-and-abetting claim and her employer liability claim fail as well.

**CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment is GRANTED, and Plaintiff's Complaint is dismissed in its entirety.  The Clerk of Court is directed to terminate Docket No. 22 and to close the case.

SO ORDERED.

Date:   August 12, 2015
        New York, New York

_____
JESSE M. FURMAN
United States District Judge